May it please the Court. The District Court rejected the claims at issue here based on legal conclusions that conflict with both the Supreme Court's and this Court's decisions. On appeal, the City has not come out strongly in defense of those legal conclusions. Rather, it primarily argues for affirmance based on factual grounds that the District Court never reached and as to which the record is underdeveloped. Rather than reaching those factual issues in the first instance. Is there any record here other than a bare bones complaint? There's certainly evidence that the City has put in, Your Honor. Mr. O'Callaghan did not succeed in putting in much evidence in sort of the traditional admissible form. And that's, I think, the problem with evaluating some of the legal issues, factual issues, excuse me, that the City has raised. Is that the record on those issues is one-sided. It was developed by the City's counsel and in some instances, particularly the record on Mr. O'Callaghan's financial situation. When the City put that evidence in at the very end of the District Court proceeding, Mr. O'Callaghan wasn't even allowed a reply of any kind. So that's the problem we see with evaluating these factual issues is there's simply not really a record for this Court to go on to get the sort of adversarial view of those issues that I think this Court would like to have. Let me start with the statute in question. It was a little unclear to me from the record whether he was actually convicted. Mr. O'Callaghan was actually charged or convicted with the statute that seems to be at issue, at least in the briefs. Can you point us to somewhere in the scant record that we have to show that he, in fact, has been convicted or charged with? I'll get the full section. I always get the numbers mixed up. 14A.50.020. He was never convicted or charged under the statute ordinance, Judge Owens. For the reasons we explain in the briefs, that's not a bar to his claim. As the majority opinion Jones explained, the Eighth Amendment protects not only against conviction, but also against what it called pre-conviction law enforcement procedures. And certainly it's a law enforcement procedure when the police or other city employees go around to homeless camps and remove people, possibly remove their property, force them to move somewhere else. And it's certainly something that would rise to the level of an injury, in fact, as far as that's required. So he has not been convicted or ever charged under this ordinance as far as we know, but that doesn't prevent him from proceeding on the claim. What type of claim is it, then? Properly construed, I think at this point it's a request for prospective relief against enforcement of the statute against people who are homeless and have no option but to sleep on public property. But all we have on this is this little addendum sort of semi-complaint-y handwritten thing that he put in. There is no record, as I understand it, on anything about the availability of shelters in Oregon or anything like that, or his particular circumstances or anything like that. Unfortunately, there's not, Judge Berzon. So is the bottom line that all you have is a request to amend the complaint? Yes, I think that's what we have is a request to either reverse or vacate and remand on an open record and for amendment of the complaint, yes. And for amendment, essentially to redo the summary judgment by putting it with some authority to, either for discovery or for introduction of evidence and so on. Basically coming out of the fact that he was pro se and just didn't do any of it. Exactly. I'll point out one thing just that your remarks touched on, the availability of shelters in Oregon. It's true we don't have a record on that subject. We do have the city's own ordinances which proclaim that there is a state of emergency with respect to housing. And so those at least give the court some reason to believe there's a problem here. But I'll grant there's no record on the issue. So we couldn't reach a Jones issue directly on this record at this point. And we couldn't, if we reached it, you'd lose. Let's put it that way. A finding on the merits of Mr. O'Callaghan's particular challenge, yes, it would lose at this point given the state of the record. Now, I think the So what is the argument for, I mean, other than the fact that he was pro se and didn't know how to do it, what's the argument for letting him do it again? Well, the argument for letting him do it again was, is in part, I think, the fact that to the extent that he tried to raise this issue of the application of the ordinance to the homeless, it was frustrated in some sense, by the way, that the district court treated it. It construed it as a facial challenge, and then it made a sort of legal ruling on the unconstitutionality motion that essentially foreclosed the issue. And I think you saw that when Mr. O'Callaghan tried to raise the issue later in the case, the district court said essentially it adhered to its earlier conclusion, is the way it put it. And so that legal ruling is in place, and, you know, we submit it's erroneous for the reasons we've explained in the briefs, and that's sort of a What legal ruling are you talking about? The legal ruling that this is a facially valid ordinance? That's the ruling I'm referring to. I think even though the ruling Well, it probably is a facially valid ordinance. It is a facially valid ordinance. We concede as much. The ruling, however, it borrows from some of the reasoning one might use to analyze an as-applied challenge. It relies on Jones. Jones involved an as-applied challenge. It relies on Judge Aiken's decision in Anderson, which was an as-applied challenge. And so if all the district court had wanted to do was rule on a facial challenge, all it needed to do was come up with one scenario in which the law could constitutionally be applied, but instead it talked about the distinction between sleeping and camping, and then it talked about the public health and safety concerns that might support the ordinance. And so there was, I think that may have contributed to the problems that Mr. O'Callaghan had in trying to raise the issue later when he tried to submit, for example, the Department of Justice's statement of interest in the Boise case and make other pleadings that raised this issue. It was treated as essentially decided. But you're correct in the main. Mr. O'Callaghan needs, in effect, a do-over, hopefully with the benefit of counsel, to put in a complaint that raises this issue properly and, of course, gather more evidence about how the city enforces this ordinance. All he really has to go on are his own experiences at this point. That's what I guess I wanted to ask you about. We do have some evidence about the city's enforcement policy, and I guess I'm not clear on what is it that you think you're going to be able to develop on remand on that front? Well, I think we'd be able to develop on remand that there are, you know, a large number of people who camp in the city, and they don't have recourse to other available housing. And so the city. Okay. Let me just stop you there because I guess I don't think anything we said in Jones would forbid enforcement of a true anti-camping ordinance, and especially the way I would read the definition of camp in the ordinance here would not run afoul of the Eighth Amendment. Now, I can understand an argument on your part or your client's part that, in fact, the city is enforcing it in a way that does violate the Eighth Amendment, but that's what I'm trying to get at. We have some indication of what the city's enforcement policy is now, and it doesn't strike me as being problematic. So you think that, in fact, the city's evidence is not true to what's really going on on the ground. Is that what it is? Well, I certainly don't know the situation on the ground, Judge Watford. You know, Mr. O'Callaghan represents that the various policies aren't always followed. He certainly argued at times in the proceedings below that, for example, it's not always possible to retrieve your property if the city takes it to the storage facility or whatnot. So I think he can test certain aspects of that. I guess I'd also push back. I mean, the statute can be read as saying if you're sleeping with a pillow or a blanket one night, that's camping. Now, do we have any record about whether that's how it's enforced or isn't enforced? Not to my knowledge, Judge Berzon, but I think that is the point I was turning to make, which is that while I don't, it's definitely a different ordinance than what was considered by this court in Jones. I also don't think that Jones cabins off camping and says, well, camping is, it's open season on camping under the Eighth Amendment. Depends what you call camping. It does, and it depends. It seems, I mean, my going-in premise is if you erect anything, then that's a different story. But here, the way camping is defined here, I think you don't have to erect anything. You just have to have something other than your clothes, essentially. That's certainly all that you need from the face of the ordinance. And I think also an argument. I don't think that's true at all. I mean, the ordinance says the person has to set up a campsite for the purpose of establishing or maintaining a temporary place to live. That's totally different from just laying down a sleeping bag and sleeping for one night. It implies a more, even if it's going to be temporary, some kind of a home base that's being set up and is going to be left there while the person goes about their daily business and then comes back to it. And that's what I'm saying. I understand the city to tell us, but we'll maybe hear more from them, that they're not enforcing it against somebody who is merely sleeping, found sleeping on the sidewalk at 2 in the morning. That, in fact, they're giving 24-hour, they post 24-hour notices saying you're, you know, whatever you've done is, we deem it to be in violation. You have 24 hours to remove it. And that nobody is being cited until there's an opportunity to comply with that. So that would take us completely outside the realm of what we had in challenge, right?  Yes, please. I think, I don't think there's a record, Judge Watford, about what it takes to be establishing a temporary place to live. I think certainly there's an argument to be made that if you are homeless and you have no other place of abode and wherever you are staying for the night, that's your temporary place to live at least until you find a new one. I mean, we've seen in instance in this court's decision in Desert Rain where there was a Los Angeles statute that talked about living out of your car and you didn't need to stay in one place for very long at all to be found in violation of that ordinance. So it's not out of the question from the face of it that somebody could be found guilty after being in a place for a night or part of a night. They say that their enforcement mechanism, though, gives a 24-hour notice, which would therefore preclude anybody getting cited for sleeping there for one night. But has that been litigated? In other words, does Judge O'Callaghan have an opportunity to make a record as to whether that was in fact what was happening or not happening? It's hard to answer that question, Judge Berzon. He probably had an opportunity in theory to develop a record on that by, you know, pleading a proper complaint and then putting in the evidence. I think once the district court again issued its ruling on the constitutionality motion, the issue was treated as more or less settled. And when he tried to bring it up again, you know, the court didn't say, well, we should get evidence on this. It just sort of adhered to its earlier conclusions. But you don't fault your client for not having fully developed the record, given the fact that he was pro se. I guess I was hoping to get some indication from you as to what the record might look like if we send it back. Are you just in a position of not knowing at this point? Well, yes, Judge Watford, it's difficult for us to make much of an investigation at this stage. We've certainly tried to give the court a sense of what's going on in the city. A lot is happening. A lot's happened even over the pendency of this appeal. At the time the notice of appeal was filed, the city was permitting camping in certain areas. That was undone last year. And there were more focused sweeps of homeless camps in the particular spring water corridor area, more focused than they had been in the past. And obviously we're under a new mayoralty now, and policies are changing again. And so it's been a bit of a moving target to keep up with, and it would take a lot of strong laboring in order to develop the record on remand. That's fair. Can I ask just one last question for you? Sure. Is your firm going to continue if we were to send it back, or are you out after the appeal? Our hope is certainly to assist Mr. O'Callaghan in obtaining pro bono counsel for when he goes back. I think that's absolutely critical if there's to be a constructive resolution in the district court. Whether it makes sense for us to represent him is not something I think we've come to a firm conclusion yet. I think it would certainly be difficult. We don't have much of a presence in this part of the country. But we would certainly, I think, work to help Mr. O'Callaghan find counsel, because I do think that's essential if we're going to move forward. Okay, we'll give you, as I said, two minutes to rebuttal. Thank you. May it please the Court, Denis Vanier appearing for the city. The district court properly denied plaintiff's motion to declare the ordinance facially unconstitutional under the Eighth Amendment, and this Court should reject plaintiff's attempt to repackage his claims as an as-applied challenge for a first time appeal. I did not see anything that suggested he was bringing a facial challenge. And I don't know why the district court read it that way. So I would refer your Honor to the plaintiff's excerpt of record, RER. In particular, I'd say pages 86 and 87. That is part of the transcript of the hearing on the motion to declare the ordinance unconstitutional. And what this Court will see on those pages is a colloquy with the Court explaining to Mr. O'Callaghan 86, so 086 and 087. And what this Court will see is there's a colloquy with the Court explaining to Mr. O'Callaghan, you know, do you understand that, you know, based on what you've presented me today, you know, I'm going to consider whether the ordinance in itself is unconstitutional, and that will not preclude you from later raising a claim that the ordinance was unconstitutionally applied to you. Do you understand that? He's, that's just not, that's neither here nor there. He's saying, look, I'm not here just to litigate the application of the ordinance to one individual, namely me. I'm here on behalf of a class of people who have nowhere else to live. That's not a facial challenge. That's an as-applied challenge to a more limited class of people. And I don't know how you can look at this transcript, but I do remember reading the pages you cited. The district court never explained to him what the difference between a true facial as opposed to an as-applied challenge was. And so I don't know how the court construed it as a pure facial challenge, because that's not what he was asking for. Well, I think I understand Your Honor's concern. And I guess what I would come back with is, is, okay. I'm sorry to interrupt, but I understood you to be saying earlier that essentially he had a second chance, but didn't lose it. Is that what you, didn't lose it? Well, and that is essentially what I'm saying. And I do want to push back a little bit about the, against the assertion that there is a scant factual record. I mean, I do understand the reality of plaintiff being prosaic in this case. But if this court looks at the district court docket, this case lasted almost four years in the district court with extensive proceedings, and the court taking just extreme pains to allow plaintiff to develop a factual record. In fact, before the summary judgment motions were filed in this case, the court, or I'm sorry, before plaintiff filed his response to the summary judgment motion by the city, the court reminded Mr. O'Callaghan that he had not introduced any evidence into the record, and in fact granted him an extension of time to allow him to introduce evidence, and told him, look, you know, if you don't introduce any evidence in opposition to summary judgment, I'm just going to have to rely on what the city submits to me. And if this court looks at the ruling of the motions to summary judgment, the court made extensive, I was about to say factual findings, but that's not quite true, because it was based on controverted evidence. But there is a very extensive factual record with declarations that were introduced. But they all dealt with the particular incidents in the past. I'm sorry, Your Honor? They dealt with the particular incidents. That is correct, Your Honor. They did not deal with this challenged statute of any kind. No, Your Honor, because, again, I think it's quite clear when Your Honor looks at, if this court looks at the transcript of the motion, of the hearing on the motion to declare the ordinance unconstitutional, and the subsequent transcripts after that, it really was framed as a challenge to the ordinance as targeting the homeless based on their status, just on its face. Right. But that's not on its face. Well, the argument was just on the face of the statute. It is directed at the homeless. No, I mean, obviously there are plenty, I mean, if somebody who has a home in Portland decides that they want to set up a tent in the middle of the sidewalk so they have somewhere else to go, there's obviously no Eighth Amendment violation. There couldn't even arguably be one. But as applied to people who have nowhere else to sleep is a different story. And he was limiting his challenge to that smaller group of people. And the district court construed it as being applied to the whole world. And that's not, so obviously that, yeah, if that's what you were, if that's the motion he was bringing, that motion was properly denied. But I don't think that's what he was doing. Well, which brings me, I guess, to the second part of that argument, is that as plaintiff pointed out in his argument here today, the court really went beyond the confines of a pure facial challenge. And so even though the court started by saying, you know, I'm constrained, this is a facial challenge, it did go on and looked at, in fact, this court's vacated opinion in Jones and the admittedly limited evidence in the record about the enforcement of the ordinance in this case. And as Your Honor pointed out, what we have in this case is the fact that plaintiff was not, in fact, cited or charged or convicted of violating the ordinance, that he was given five days' notice, in fact, the structure was posted. He was told, look, you have five days to remove your possessions. And that happened. And so that is, we do have a factual record about how the ordinance was applied to plaintiff. And the court went and analyzed that and said, you know, based on what I have, there really is no basis for me to conclude that the ordinance is unconstitutional. And for that reason, this court should affirm the judgment of the district court, especially when, again, you know, understanding the realities of dealing with a pro se plaintiff. But I would encourage this court to look also, for example, at the district court's ruling denying plaintiff's motion for appointment of counsel, in which the court explains that that plaintiff is articulate and is able to articulate his claims. I would also point to just the history of the district court doing everything. I mean, the other problem here is, I mean, you're brief at least, asserts that he had a house of his own and he had plenty of money and so on. He never litigated that. I'm sorry, Your Honor? Was that ever litigated? He says it's all not true, but he didn't have a chance to litigate it. He doesn't really live in this place and so on. Well, I don't think that's correct, Your Honor. I mean, again, so we introduced in our supplemental exhibit record, there was a declaration that was introduced in the district court by the city, a declaration stating that, you know, Mr. O'Callaghan has a residence at this particular address and attaching a photo of that residence. That was where he was able to get legal mail, right? That's not a residence. We don't know anything about who lives at that house or what their relationship is to the plaintiff, do we? I was kind of shocked, actually. I saw, I mean, your brief, I don't know if you wrote the brief. It was quite colorful and it's opening salvos, but then when we went to look at the actual proof to back up your statements,  I apologize if that's the impression it gives, Your Honor. I would refer to SCR 2, paragraph 7, that states under penalty of perjury is a declaration that states this is Mr. O'Callaghan's current residence located at 1905 Southeast 24th Avenue in Portland, Oregon. Whose declaration is this? That was the declaration of the trial attorney in the case, the city's trial attorney, Mr. Rice. The city's trial attorney. I'm sorry, Your Honor. The city's, and that was based not only on the notion that he had. We don't know what it was based on, Your Honor. I would also, again, I mean, refer this court to the transcript of Mr. O'Callaghan's declaration, which is, I'm sorry, deposition that was taken in open court, which is attached to the city's excerpt of record. Now, what I do want to say, though, I think it's important to emphasize that, yes, we agree that that issue was not fully litigated. But what we do have in the record is a declaration that there is this residence. There is a declaration as to financial situation. And there are Mr. O'Callaghan's statements to the court to the effect that he's traveling to these places and all that. I don't want to make too much. That what? I'm sorry. I'm sorry. That he's engaging in international travel. There's that colloquy with the court. Now, I really, I am not, you know, I'm not relying on that. I mean, you sure didn't debrave. Well, no. No, no. I cited in the brief as a way to provide context in this case and in particular to rebut assertions in the opening brief that Mr. O'Callaghan himself was homeless. There is evidence to the contrary in the record. But, you know, that is not what, you know, we are not asking the court to affirm on that basis. We are asking this court to affirm because based on the factual record as it was developed below and based on how the issues were presented to the court after the court, again, going really out of its way to give Mr. O'Callaghan an opportunity to make his point. Let's just be specific, okay. At the time the district court, what the district court had originally was a motion, a motion to declare the statute unconstitutional, right? That's correct. She took that essentially on the pleadings, right? That is correct. And she ruled against him on the pleadings. That's correct, Your Honor. So when did he have an opportunity to make a record? Indeed, several years after that, Your Honor. But I thought she had ruled against him. She just missed the motion. The motion was finished. I understand, Your Honor, but as the colloquy on pages 86 and 87 of the exit record show, the court did explain that was going to be a limited ruling based on the pleadings that it had at that point and that Mr. O'Callaghan would have the opportunity later. So the problem was that he didn't make an affirmative motion to amend the record. That's the problem. Did he amend the complaint? Well, he did. I mean, again, this was a very extensively litigated case over several years. But not on this issue. That's the problem because she dismissed it out of the box. Well, she dismissed it out of the box, but you will see there was a motion for reconsideration filed. And, in fact, the ‑‑ I want to make sure I'm accurate on this, but my recollection was that the declaration that I cite to the exit record that refers to Mr. O'Callaghan's residence, I believe that that was a response to Mr. O'Callaghan's motion for reconsideration after the summary judgment, I believe. And the court, if ‑‑ And the court said, I already decided this. Well, the court said, no, I grant the motion for reconsideration. It did say that. It said, I grant the motion for reconsideration, and I've reconsidered based on everything that I have in front of me, and I'm adhering to my prior ruling. Can we actually get back to a question that Judge Watford asked opposing counsel? It has to do with the enforcement of the statute in question. If you look at the text of 14A.50.020, it defines camp. Judge Watford's question, and I think you're ready to answer this, is the city enforcing the statute against someone who's simply sleeping in a doorway or on the sidewalk in a sleeping bag? So the short answer to that is no. It is enforced only if there is, I think as Your Honor pointed out, some sort of intent to establish or maintain a temporary place to live. So my understanding is that it is not being enforced to someone who sleeps overnight. And we know that from the record because? We do not know that from the record. And so that's why I am reluctant to come here and make, honestly, that representation. I mean, we have provided this Court with a statutory interpretation that my understanding is plaintiff does not contradict. I mean, what we have here is the interpretation of the terms of the statute that refers to the purpose of maintaining or establishing a temporary place to live. We've also cited this state statute that requires that before a camp, an established camp, is dismantled, 24 hours notice be posted. And we know that happened in this case. Don't you all want to get this issue resolved once and for all? I mean, I guess I'm, you're resisting, we're not talking about the plaintiff winning here. We're talking about just sending it back so that a record can be developed on a point that you just conceded the record isn't developed on. I agree, Your Honor. But I would say that this is not the case for that. And really the reason that's not the case for that is this is not that type of plaintiff. There's enough. Yeah, that may be true. I'm with you on that. But again, you admitted that that issue hasn't been fully litigated either. And so that could be resolved. And maybe you're right. Maybe this turns out not to be the right case. But if it were the right case, in other words, if Mr. O'Callaghan truly were homeless, wouldn't you want to get a definitive ruling from the federal court saying A or A on this? I think it's true, yes. I think if this were the correct plaintiff with the correct record, absolutely, Your Honor. Well, then why don't we send it back? You can prove that, in fact, he's not the right plaintiff and maybe this case goes away. I'm sure there'll be another one because there are other, plenty of other people out there who could be proper plaintiffs. Well, the reason I would say to not send it back for that precise reason is, first of all, I mean this court would have to conclude that the district court erred in its ruling. Oh, I think it did. It construed it as a facial challenge. I don't think there's any question about that. Well, but again, as we've pointed out, the court did go on and conduct an analysis, even beyond the facial challenge. On no record. But that's, as soon as you get into the as-applied realm, you need a record as to what the city's enforcement policy is, and we don't have it. I understand. So how can we, I mean, there's no basis to affirm on that route. So, but the second part of my answer was going to be that, again, I mean, here we had three to four years of extensive litigation with motions to compel. I mean, the court went to the lengths of even holding depositions in open court. And there's no reason to believe that a factual record would be developed differently if another four years of litigation were to occur. But this is where I come to the same problem again. My understanding is that the district court dismissed that, I mean essentially treated that motion as an amendment to the complaint, as to the validity of the ordinance, and dismissed it. It was out of the case. Is that right? And that everything that happened afterwards was not about that because it was out of the case. Is that wrong? I believe that is wrong, Your Honor. Why? It is wrong because if you look at the pleadings that were filed after that motion, particularly the pleadings on the city's motion for summary judgment and the response motion for summary judgment, the Eighth Amendment was touched upon. Did she, in her motion to summary judgment, touch upon it? I believe, if my recollection is correct, and again, I'm hesitant, but I believe my recollection is she mentions having reconsidered the ruling. It's out of the case. I'm not going to decide it because it's out of the case. Well, but there's nothing, I'm sorry, Your Honor, I see I'm out of time. Okay, go ahead. What I was just going to say is there is nothing in this record that would suggest that that denial of the motion to reconsider was erroneous. And so based on the Court's opinion and the record, we ask this Court to affirm the judgment of this Court. Okay, thank you very much. Yes, sir, we have two minutes to respond. Thank you, Your Honor. I'll just, just two points. First, I want to touch on my friend's assertion that Mr. O'Callaghan is not the right type of plaintiff to bring this case. The evidence in the record certainly would suggest that, but the evidence in the record is an incomplete picture, and that's the problem. If the record were more fully developed, the record might reflect, for example, that Mr. O'Callaghan is 73 years old, that he's been on the streets for a number of years, that his, according to him, what he's told us, his main source of income at this point is Social Security. Again, according to what he's told us, I don't have any proof of this, he is no longer receiving any income from whatever family sources were discussed. So there's much more fleshing out that needs to be done there, and potentially if the complaint were amended, there could even be additional plaintiffs if that were, you know, would help facilitate things. So it's, I don't think that this case shouldn't, certainly shouldn't be affirmed on that basis. There's simply not a complete enough record to do it. And then the other one. The summary judgment order, float down again, didn't mention this issue, is that right? The final summary judgment order, it did not. All right. There was a motion to reconsider after that, I can't even find that. It was, I'd have to refresh my memory with the docket sheet. I think it was around the same time, they were more or less under consideration at the same time. But again, the problem with the final motion to reconsider was Mr. Rice put in the response on the declaration that my friend talks about, and Mr. O'Callaghan wasn't permitted a reply on that issue. So it simply hasn't been litigated. And what did Judge Brown say in the motion to reconsider, in the order of reconsideration? Did she say, oh, you decided this, let's leave them at it? I could read. I can't find it, actually, but okay. We will find it. It's a text entry on the docket, Your Honor. It's at, it's docket entry number 271, which appears on excerpts of record 115. The court has reviewed the motion for reconsideration. The court grants the motion to the extent that the court reconsiders its opinion, but the court notes that the plaintiff moved for reconsideration on this issue previously, and the court declined to alter its conclusion. Plaintiff raised it in the context of a motion for restraining order, and so plaintiff does not point to any new law or authority that alters the court's conclusion. So the court adheres to its conclusion. So essentially. Okay. Your additional time is up, so thank you very much. The case of O'Callaghan v. City of Portland is submitted, and we will go on to Martin v. City of Boise.
judges: Berzon, Watford, Owens